UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIM. NO. 3:16-CR-178 (VLB)** |
| | : | |
| **v.** | : | |
| | : | |
| **JAMES ERIK GODIKSEN** | : | **FEBRAURY 17, 2017** |

### MEMORANDUM OF DECISION ON EVIDENTIARY MOTIONS

Before the Court are two evidentiary motions central to the preparation of this case for trial. The first is the Motion for Discovery filed by the Defendant, James Erik Godiksen, on January 6, 2017, seeking the identity of, and communications or documents regarding, a confidential informant housed with him at the New Haven Correctional Center. [Dkt. No. 34]. The second is the Government's Motion in Limine filed on December 22, 2017 seeking to introduce, through a corrections officer's testimony, statements made by the Defendant. [Dkt. No. 28]. As neither party objected to or otherwise responded to their opponent's motion, the Court conducted a hearing on February 16, 2017 which, together with the parties' memoranda of law in support of their motions, informs the Court's decision articulated herein. For the reasons stated below, the motion of the Defendant is DENIED IN PART AND GRANTED IN PART and the motion of the Government DENIED.

I. <u>Background</u>

The Defendant was arrested on September 14. 2016 and charged by a Complaint on the following day, which was superseded on September 28, 2016 by an indictment returned by a grand jury charging him with one count of Murder for Hire in violation of 18 U.S.C. 1958. The facts recited in this decision were taken

1

from the Government's timely trial memorandum and the exhibits filed incident thereto and from statements made at the hearing.

The Defendant was incarcerated for 30 days at the New Haven Detention Center following his arrest for violating a protective order in favor of his former wife, who is the target of the Murder for Hire charge which is the subject of this prosecution. While incarcerated, the Defendant had certain conversations with inmates including an inmate identified as "Josh." According to Mr. Godiksen, Josh and other inmates, taking advantage of his naivety, induced him to seek to engage a person to murder his former wife. Josh informed a corrections officer of Mr. Godiksen's intent and the corrections officer in turn notified law enforcement. Law enforcement officials conducted an investigation in which an undercover officer called Mr. Godiksen and arranged to meet him to discuss murdering the Defendant's former wife. During the initial conversation, the Defendant indicated that he was expecting the call, expressed a fervent desire to engage the services of the undercover officer to kill Godiksen's former wife, negotiated the price, inquired as to whether the undercover officer would accept a motor vehicle as compensation for his services in lieu of cash, and indicated that he would need time to secure the $5,000 negotiated price for the murder. Godiksen had several subsequent conversations with the undercover agent in furtherance of the scheme.

II.  The Discoverability of Informant's Identity and Related Communications

Defendant seeks the informant's identity, any recorded communications between Defendant and the informant, and any "documents or objects" in the

Government's possession regarding the confidential informant. The Court will address each request in turn.

    a. <u>The Informant's Identity</u>

The Government has an Informant's Privilege not to disclose the identity of an individual who informs the Government about violations of law (the "informer's privilege"). *Roviaro v. United States*, 353 U.S. 53, 59 (1957). However, a Court may order disclosure of an informant's "identity, or the contents of his communication," if it is "relevant and helpful to the defense of an accused" or "essential to a fair determination of a cause." *Roviaro*, 353 U.S. at 60-61 (1957). In *Roviaro*, the Court found the nondisclosure was in error because the informant's identity and testimony were "highly relevant" and "might have been helpful to the defense." *Id*. at 63. The Court explained the informant was the sole witness to the transaction leading to Defendant's arrest, and his testimony might have disclosed entrapment or lack of knowledge of the contents of the package, and accordingly his identity should have been disclosed. *Id*. at 65. The court instructed that to determine whether the informer's privilege should apply in a given case, the Court must balance "the public interest in protecting the flow of information against the individual's right to prepare his defense," considering "the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors." *Roviaro*, 353 U.S. at 62.

In *U.S. v. Jacobs*, 650 F. Supp. 2d 160, 169 (D. Conn. 2009) the court applied *Roviaro* in a case where the Defendant was arrested for possession with intent to distribute cocaine base. *Id*. at 163. Defendant reasoned he required the

3

information to investigate the informant's credibility and the source of the informant's alleged knowledge, and asserted the informant likely possessed information "bearing directly on the defense." *Id*.  Judge Haight considered "three factors" when conducting the *Roviaro* balancing test: "whether the confidential informant was an eyewitness or mere tipster, the relationship between the issue and the probable testimony of the confidential informant, and the government's interest in nondisclosure." *Id*. at 170.  The Court denied the disclosure request because the informant was a "mere tipster," there was nothing in the defendant's motion to suggest the informant would play any role in the trial on the merits, nor was there anything to suggest the informant could corroborate a defense of entrapment. *Id*.  Similarly, in *U.S. v. Muhammad*, 3:12-cr-0206 (AVC), 2013 WL 6244139 (D. Conn. Dec. 3, 2013), the District of Connecticut, also applying *Roviaro,* denied the Defendant's request for information regarding informants reasoning that the Defendant's assertion that "the government is obligated to provide information about informants because these individuals participated in and were material witnesses to the events charged in th[e] indictment" failed to make a "particularized showing of the value of the information to the defendant's defense." *Id*. at *2.

The Defendant failed to present sufficient facts to overcome the privilege under the *Roviaro* framework.  The Defendant failed to show that the information sought would aid him in pursuing an entrapment defense.  In order to establish an entrapment defense, a defendant must show government inducement of criminal activity, and the defendant's lack of predisposition to engage in the

4

criminal conduct.  *U.S. v. Kopstein*, 759 F.3d 168, 173 (2d Cir. 2014) (stating elements of entrapment.)  Here, the Defendant has not shown that the information he seeks has any tendency of assisting him in establishing either of the two elements.  He was unable to cite any facts suggesting that any governmental official induced the Defendant.  The Defendant admitted that he was induced by fellow inmates and offered no viable theory which implicated the involvement of a corrections officer who informed law enforcement about the plot or any other government official.  He surmised government involvement from the mere fact that the Defendant was naïve, having never been incarcerated and was detained for only thirty days when he met Josh, the confidential informant, who claimed to have served time before.  The Defendant asserts government involvement through a theory that the corrections officer learned of the plan from Josh, informed law enforcement of the plot, and provided law enforcement with the Defendant's cellphone number.  The Defendant could not cite any fact tending to show that the corrections officer was collaborating with the confidential informant.  Nor did he describe a sequence of events which would have enabled the corrections officer to collaborate with the confidential informant.

      The Defendant also offered no facts tending to suggest that the information sought would assist in satisfying the second prong of the *Roviaro* analysis.  Godiksen failed to present any facts or theories tending to show that the information sought would assist him in demonstrating that he lacked the proclivity to commit a crime of violence against his former wife.  On the contrary, the facts presented established that Godicksen  not only had a predisposition,

but had previously committed or threatened to commit a crime of violence against his former wife, resulting in the entry of a judicial restraining order, the violation of which was the reason he was in jail with the confidential informant. Under Connecticut law, a "family or household member" may apply for a restraining order if he or she "has been subjected to a continuous threat of present physical pain or physical injury, stalking or a pattern of threatening" by the subject of the proposed restraining order, and the Court may "make such orders as it deems appropriate for the protection of the applicant and such dependent children or other persons as the court sees fit." Conn. Gen. Stat. § 46b-15. A person violates a restraining order when he or she, "having knowledge of the terms of the order, (A) does not stay away from a person or place in violation of the order, (B) contacts a person in violation of the order, (C) imposes any restraint upon the person or liberty of a person in violation of the order, or (D) threatens, harasses, assaults, molests, sexually assaults or attacks a person in violation of the order." Conn. Gen. Stat. § 53-223b(a). As such, Mr. Godiksen has twice demonstrated a predisposition to commit or threaten acts of violence against his former wife. Further, his imprisonment for violating the restraining order precluding him from having personal contact with her constitutes a motivation for him to engage the services of another person to harm her. The Defendant has not demonstrated the need for, or any prejudice which would result from withholding, the identity of the confidential informant.

     Further, the Defendant has other means to develop information to formulate an entrapment defense. The informant is the "tipper" and the

corrections officer is the "tippee," thus the Defendant is not totally precluded from obtaining information about potential entrapment.  Defense counsel has not yet spoken to the corrections officer and therefore cannot assert that disclosure is either needed or essential to establish an entrapment defense.

The cases Defendant cites in support of his motion to discover the informant's identity do not suggest a different result. Defendant relies on *United States v. Jackson*, 345 F.3d 59, 70 (2d Cir. 2003), which is distinguishable from the present case because the informant in that case was the only person with direct personal knowledge of the defendant's conduct.  Here, the Government did not rely on the information provided by the confidential informant.  The investigation included several independently recorded telephone and in-person communications between Godiksen and an undercover law enforcement agent during which the Defendant repeatedly and fervently corroborated the confidential informant's tip, stating his desire to have his former wife killed and the manner of the killing.  As the Second Circuit said in *Jackson,* there is "no case . . . provid[ing] defendants with a generalized affirmative right . . . to obtain statements of non-witnesses merely because they happen to be informants." *Id*. In addition, the confidential informant is not the only person who can inform the Defendant of the role government played in the formulation of the charged murder-for-hire plot. The Government has disclosed the identity of the corrections officer who learned of the plot and infirmed law enforcement.

Defendant also relies on *U.S. v. DeLeon*, 90-cr-221, 1990 WL 91738, at *2 (S.D.N.Y. June 26, 1990).  In that case, the Court noted, as in *Jackson,* that

7

disclosure of an informant's identity or communications may be appropriate if "relevant and helpful to the defense," but emphasized that "it is not sufficient to show that the informant was a participant in and witness to the crime charged." *Id.* Where the government has announced its intention not to call the informant as a witness, and the defendant has not made a particularized showing of need to question the witness, for example because the informant could "shed light on an apparent contradiction in . . . testimony," disclosure of the informant's identity is not appropriate. *Id.* at *2-3. Here, although the Government has stated it does not intend to call the confidential informant at trial, it does intend to call the corrections officer and the corrections officer's identity has been disclosed. Further, the Defendant had not made a particularized showing of need to question the confidential informant. He cannot point to any facts or circumstances which form the basis of a credible suspicion that the corrections officer or any other law enforcement official colluded with the confidential informant to induce Godiksen to hire someone to murder his former wife. Indeed, that theory lacks credibility. Had law enforcement officials induced the confidential informant to help them entrap Godiksen, they could have caused the confidential informant to induce Godiksen to commit the overt act in furtherance of the plot in recorded conversations while Godiksen was still in prison.

Defendant's reliance on *United States v. Moreno-Rodrigez*, 744 F. Supp. 1040, 1041 (D. Kan. 1990) is unpersuasive. The Defense is correct that credibility of a particular witness will bear upon this issue; however Godiksen has not

8

raised a question of credibility.  He has not interviewed the corrections officer yet and has not challenged the credibility of any other evidence.

The Government has stated that the confidential informant is unwilling to come forward because of a fear of reprisal.  In *Moreno-Rodrigez*, the Court declined to disclose the name and address of the confidential informant in "the interest of protecting confidential informants from acts of violence." *Id*. The Court reasoned the defendants would have full opportunity to cross examine the informant if called to testify at trial, and accordingly protecting his or her identity did not violate the defendants' right to confront their accuser. *Id*.  Here, the Government reports that the confidential informant fears reprisals from the Defendant.  The Defendant's predisposition to violent reprisals is firmly established by the audio and video tape evidence of the Defendant's meetings and other communications with the undercover officer.  Secondly, as noted above the Defendant has offered no basis to suspect overreaching tactics which would certainly constitute *Brady* material.  The Court specifically asked the Government if it had disclosed *Brady* material.  The Government responded affirmatively and this Court has no reason to question and is satisfied with the answer of the officer of the Court.

Taking into consideration the absence of particularized facts establishing that disclosure of information concerning the confidential informant would be helpful, the availability of other sources of the information the Defendant seeks from the confidential informant, and the Government's interest in maintaining the confidentiality of its informant, and the totality of the facts presented the

9

Government's interest in preserving the privilege outweighs the Defendant's desire to obtain the information as the Defendant has failed to establish that it has any tendency to assist the Defendant in overcoming the formidable obstacles to mounting an entrapment defense. Accordingly the Defendant's motion for disclosure of the informant's identity is DENIED.

### b. Recorded Communications Between Defendant and the Informant

Recorded communications between Godiksen and the informant must be disclosed pursuant to Federal Rule of Criminal Procedure 16(a)(1)(B). Rule 16(a)(1)(B) requires the Government to disclose "any relevant written or recorded statements made by the defendant . . . within the possession, custody, or control of the government." This rule grants defendants "virtually an absolute right" to their own written or recorded statements as long as they are relevant to the crime charged. *U.S. v. Thomas*, 239 F.3d 163, 167 (2d Cir. 2001) (finding failure to produce a transcript of Defendant's testimony in a prior proceeding until after Defendant's direct examination in a criminal action for felony possession of ammunition violated Fed. R. Crim. Pro. 16. Here, the Government has averred that the Defendant's statements to the confidential informant were not recorded and that there are no recorded statements. Thus, to the extent there are no undisclosed recorded statements or the defendant, formal or informal, the motion is DENIED.

Although the Defendant's request is limited to any recorded conversations between Defendant and the informant, if the Defendant's statements were not recorded, and were not made in response to interrogation by someone the

10

**Defendant knew to be a government agent, the Government is not obliged to disclose the substance of the statements.** *U.S. v. Viserto*, **596 F.2d 531, 538 (2d Cir. 1979) (finding Government was not obligated to produce Government agent's handwritten notes memorializing conversation overheard between two co-defendants). Accordingly, if the conversation between the informant and the Defendant was not recorded, the Government need not disclose its substance.**

      **c. <u>Documents or Objects Regarding the Informant's Communications with the Government</u>**

      **Finally, Defendant's request for "documents and objects relating to the conversations between the confidential informant and the government agent" is meritorious. Federal Rule of Criminal Procedure 16(a)(1)(E) provides that "Upon request of the defendant the government shall permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, which are within the possession, custody or control of the government, and which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant."**

      **Materiality means "more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor."** *U.S. v. Maniktala*, **934 F.2d at 28.**

**Defendant asserts any documents or objects relating to conversations between the informant and the Government would be material to his proposed entrapment defense, entrapment having two elements: government inducement of criminal activity, and the defendant's lack of predisposition to engage in the criminal conduct.   As the Second Circuit found in *Maniktala*, when assessing the materiality of the requested discovery, the Court must consider the "backdrop of all the evidence presented to the jury." 934 F.2d at 28.  Other evidence may limit the value of the requested evidence in support of the defendant, rendering the requested evidence immaterial. *Id.* (finding fourth copies of time sheets immaterial to Defendant's defense that someone else fraudulently altered the time sheets, when only one entry was altered by another individual and all others appeared to have been altered by Defendant). Accordingly, the Defendant's motion, to the extent that it seeks disclosure of "documents and objects relating to the conversations between the confidential informant and the government agent" which are material to the preparation of the defendant's defense or are intended for use by the government as evidence in chief at the trial, or were obtained from or belong to the defendant, is GRANTED. The parties are instructed to inform the Court immediately if they are unable to agree on which material is subject to disclosure.**

 III.     <u>**The Government's Motion in Limine**</u>

**The Government asserts the confidential informant's statements to the Corrections Officer are admissible non-hearsay because (1) they put the Defendant's statements and the investigation in context, and (2) the Defendant's**

instruction to the informant to "tell the hired murderer to call [a certain cell phone] number and leave a message for 'FISH'" is an instruction, and accordingly not an assertion within the definition of a "statement" under the hearsay rules.

### a. Out-of-Court Statements Used for Context

The Government's argument that the informant's statements to the corrections officer are admissible because they are not being offered for the truth of the matter asserted, but rather to establish context for the Defendant's actions and the Government's investigation, presents a close question. Federal Rule of Evidence 801(c)(2) states that to qualify as hearsay, a statement must be "offer[ed] in evidence to prove the truth of the matter asserted in the statement." In some instances, statements made to investigating agents are admissible at trial not for the truth of the matter, but as background to explain the investigation. *U.S. v. Reyes*, 18 F.3d 65, 70 (2d Cir. 1994). Even where the statement is hearsay, a "background" statement is admissible if the non-hearsay purpose of the out-of-court statement is relevant and if the probative value of the evidence for its non-hearsay purpose outweighs the danger of unfair prejudice resulting from the impermissible hearsay use of the statement. *Id.* at 70-71.

For example, in *Reyes*, the Defendant was charged with conspiracy to import cocaine. *U.S. v. Reyes*, 18 F.3d 65, 67 (2d Cir. 1994). At trial, Government witnesses described the investigation, beginning with a tip which led to investigation of a cargo ship, which led to discovery of the cocaine and certain cooperating defendants' involvement, which led to discovery of Defendant Stein's involvement. *Id.* Specifically, the Government asked one of its witnesses

13

whether discussions with the cooperating co-defendants "cause[d] you to believe that there were other people involved with them in this particular criminal activity," to which the witness replied "Yes, I did," and to identify those additional people as Defendant Stein and Defendant Reyes. *Id.* at 67-68. The Court found the out-of-court identifying statement made to the witness was technically offered not for the truth of the matter asserted but to provide context to the Government's investigation. *Id.* at 69. However, the Court noted the "likelihood is sufficiently high that the jury will not follow the limiting instructions, but will treat the evidence as proof of the truth of the declaration" rendering the evidence "functionally indistinguishable from hearsay." *Id.* The Court explained its conclusion with a two-part analysis. *Id.* at 70. First, the Court determined whether the non-hearsay purpose of the evidence is relevant, considering the following inquiries: Does the background or state of mind evidence contribute to the proof of the defendant's guilt; If so, how important is it to the jury's understanding of the issues; Can the needed explanation of background or state of mind be adequately communicated by other less prejudicial evidence or by instructions; has the defendant engaged in a tactic that justifiably opens the door to such evidence to avoid prejudice to the Government" *Id.* Second, the Court weighed whether the probative value of the evidence for its non-hearsay purpose is outweighed by the danger of unfair prejudice resulting from the impermissible hearsay use of the statement. *Id.* In the prejudice analysis, the Court considered the following factors: Does the declaration address an important disputed issue in the trial; is the same information shown by other

14

uncontested evidence; was the statement made by a knowledgeable declarant so that it is likely to be credited by the jury; will the declarant testify and be available for cross-examination; if so, will he testify to the same effect as the out-of-court statement; is the out-of-court statement admissible in any event as a prior consistent, or inconsistent, statement; can a curative or limiting instruction effectively protect against misuse or prejudice. *Id.* at 70-71. The *Reyes* Court found the above factors weighed against admitting the "background" evidence regarding the investigation. *Id.* The Court explained the Government agent's state of mind during the investigation was "not relevant to the guilt or innocence of the defendant," as it might have been had Defendant called into question the Government's state of mind by asserting bias or fabricated evidence. *Id.* at 71. In addition, the Court found a high risk of prejudice because the out-of-court statements "addressed the most important disputed issue in the trial; they directly implicated the defendant in the crime." *Id.* at 71. Further, the out-of-court speakers, the cooperating co-defendants, did not testify at Defendant Stein's trial, leaving Stein without an opportunity to discredit their statements through cross-examination. *Id.* Because of the "high potency" of the declarations, the Court found a curative jury instruction not to consider the truth of the matter asserted was insufficient, and the statements should have been excluded altogether. *Id.*

The Second Circuit reached the same conclusion in *U.S. v. Gomez*, 617 F.3d 88, 91 (2d Cir. 2010), in which the Government elicited trial testimony from a detective to "suppl[y] foundation for transcripts of recorded conversations" between Defendant and his co-conspirator. The detective testified that he told

15

the co-conspirator "to call the person who gave him the 5,000 pills that we had seized that morning" and dialed Defendant's number, which explained why the co-conspirator had the recorded conversation with Defendant.  *Id.* at 90.  The Court found the bearing of the detective's testimony on the Defendant's guilt "was clear and the inference that the jury would draw from it – that [Defendant] was [the co-conspirator's] supplier in the transaction for which [the co-conspirator] was arrested – was inescapable."  *Id.* at 91.  On balance, the Second Circuit counsel that the district court use great care in determining whether such evidence should be admitted to the jury especially where, as here, the proposed evidence is potent.

By contrast, in *U.S. v. Slaughter*, 386 F.3d 401, 403 (2d Cir. 2004), the Second Circuit applied the *Reyes* balancing test to a Government agent's testimony that a civilian pointed to the discarded weapon, allowing police to recover it.  The Court found the testimony was proffered for a legitimate purpose, to explain how the officer found the weapon, and that the probative value of the evidence was not outweighed by the danger of unfair prejudice.  *Id.* at 403.  There the out of court evidence was relatively benign.

The facts of this case resemble the facts in *Reyes* and *Gomez* more than the facts in *Slaughter*.  The proposed testimony that Godiksen "reached out to a number of inmates to find a person who would be willing to kill Godiksen's ex-wife . . . in exchange for money" and that Gidiksen gave the confidential informant his telephone number to give to the would-be- murderer-for- hire has a

**16**

high risk of prejudice because the statement directly implicates Godiksen in the crime.  [Dkt. No. 28 at 1.]

The entirety of the proposed evidence is not instructional.  Even the instructional portion of the statement implies a hearsay statement because implicit in giving someone your telephone number is a statement that you want them to call you for a particular reason.  The statement that Godikson asked people to solicit a hit-man is hearsay while the statement that the would-be killer should call his cellphone and leave a message is arguably instructional.  Taken together, as they must be, they are impermissible hearsay which contributes to the proof of the Defendants' guilt in a way which cannot be mitigated by a curative instruction.  As yet, the defense has done nothing to open the door to such testimony. The prejudice resulting from the testimony outweighs its probative value.  The maker will be unavailable for cross examination, and conveyance of the statement by a corrections officer rather than an inmate bolsters its credibility.  It also predisposes the jury to know that the Defendant was incarcerated.

Finally, the proposed testimony is unnecessary, as it is not the source of the information but the result of the ensuing investigation which matters.  Rather than offering this highly prejudicial testimony to simply explain why Agent DeAngelo called Mr. Godiksen, an investigating officer can merely testify that he or she received a tip which Agent DeAgelo and his colleagues were investigating when he called the Defendant. The parties can stipulate or, if they prefer, the Court could give an instruction to the effect that, law enforcement agencies

17

routinely receive information which they investigate.  The Government has not shown that the source of the information is important.  Clearly the results are important; the Government is entitled to elicit testimony which places the evidence offered in context, but only if it does not unduly prejudice to the Defendant.  This ruling expresses no opinion whether Mr. Godiksen's incarceration is admissible under Fed. R. Evid. 403.

      For the foregoing reasons, the Court DENIES the Government's Motion in Limine.

                                        IT IS SO ORDERED.

                              _____/s/_____
                              Hon. Vanessa L. Bryant
                              United States District Judge

Dated at Hartford, Connecticut: February 17, 2017